**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

_____
                                        )
**METROPOLITAN CAMPUS POLICE**          )
**OFFICER'S UNION**                     )
**2225 Georgia Avenue, #804**           )
**P.O. Box 26384**                      )
**Washington, DC 20001**                )
                                        )
     **Plaintiff,**    )
                                        )
     **v.**           )          **Civil Action No. _____**
                                        )
**HOWARD UNIVERSITY**                   )
**2400 6th Street, NW**                 )
**Washington, DC 20059**                )
                                        )
     **Defendant.**    )
_____)

## <u>NOTICE OF REMOVAL</u>

TO:     THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
           DISTRICT OF COLUMBIA

PLEASE TAKE NOTICE that Defendant Howard University, by counsel, pursuant to 28 U.S.C. §§ 1441 and 1446, submits this Notice of Removal of Civil Action No. 06-711 from the District of Columbia Superior Court to this Court.  As grounds for removal, Howard University states as follows:

1.     On or about February 3, 2006, Howard University was served with Plaintiff's Summons, Motion for Confirmation of Arbitration Award ("Motion"), and an Initial Order from the Superior Court in the civil action entitled <u>Metropolitan Campus Police Officer's Union v. Howard University</u>, Case No. 06-711.  A true and correct copy of the Summons, Motion and Initial Order are attached hereto as Exhibit "1."

2.      The Summons, Motion and Initial Order constitute all the processes, pleadings, and orders received by Howard University from the Superior Court in this action.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1331 because Defendant Metropolitan Campus Police Officer's Union ("Defendant" or the "Union") seeks, in the State Court Action (D.C. Superior Court Civil Action 06-711) (hereafter, the "State Court Action"), confirmation of an arbitration award, pursuant to D.C. Code § 16-4315.  The State Court Action arises under, and is pre-empted by, a federal statute, Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) ("Section 301(a)").   Specifically, the State Court Action is a lawsuit to enforce an arbitration award based on an alleged violation of a contract between Howard University, an employer, and the Union, a labor organization representing employees in an industry affecting commerce, within the meaning of Section 301(a).

4.      The time for filing this Notice has not expired pursuant to 28 U.S.C. §1446(b). This Notice is filed with this Court within thirty (30) days after Howard University's receipt of Plaintiff's Summons and Motion filed in the District of Columbia Superior Court.

5.      By virtue of this Notice of Removal, Howard University does not waive its right either to respond to the Motion and/or assert any claims, defenses or other motions, including but not limited to, Rule 12 motions permitted by the Federal Rules of Civil Procedure, or any motion to vacate the arbitration award pursuant to Section 301(a) or any applicable law.

6.      Written notice of the filing of this Notice will be given forthwith to all adverse parties as required by law.

7.      A true copy of this Notice will be filed in the office of the District of Columbia Superior Court, the court in which this case was originally filed.

**WHEREFORE,** Howard University respectfully requests that the instant action now pending in the District of Columbia Superior Court be removed to the United States District Court for the District of Columbia.


Respectfully submitted,


Dated: February 13, 2006          By: _____

                                  TRINA L. FAIRLEY (D.C. Bar No. 464102)
                                  KEITH J. HARRISON (D.C. Bar No. 416755)
                                  **KING, PAGANO HARRISON**
                                  1730 Pennsylvania Avenue, N.W.
                                  Suite 900
                                  Washington, D.C.  20006
                                  (202) 371-6800

                                  Counsel for Defendant
                                  Howard University

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on this 13th day of February 2006, I caused a copy of the foregoing **NOTICE OF REMOVAL** to be delivered via first class mail to the following individual:

William G. Jepsen, Jr.
1711 Station Road
Crofton, MD 21114

Attorney for
Metropolitan Campus
Officers Union

_____
Trina L. Fairley

# EXHIBIT NO. 1



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

METROPOLITAN CAMPUS POLICE OFFICERS UNION
(MCPOU)                                      C.A. No.        2006 CA 000711 B
Vs.
HOWARD UNIVERSITY (HU)

### INITIAL ORDER

RECEIVED
OFFICE OF THE
GENERAL COUNSEL

'06  FEB -3  A3:05

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1)  Effective this date, this case is assigned to the judge designated below. All future filings in this case shall bear the name of the judge currently assigned to the case beneath the case number in the caption. Upon the filing of any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2)  Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3)  Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive reading. As to the defendant who has failed to respond, a default will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4)  At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge as an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5)  Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to:  Judge PATRICIA A BRODERICK
Date:      _____
Initial Conference: 9:30 am, Friday, June 02, 2006
Location:   Courtroom 112
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001

Caio-60.doc

CA Form 1

# Superior Court of the District of Columbia

### CIVIL DIVISION
### 500 Indiana Avenue, N.W., Room JM-170
### Washington, D.C. 20001 Telephone: 879-1133

*RECEIVED OFFICE OF THE*

MET: CAMPUS POLICE
OFFICERS UNION

*Plaintiff*

**06-0000711**

Civil Action No. _____

vs.

HOWARD UNIVERSITY

*Defendant*

*RECEIVED OFFICE OF THE GENERAL COUNSEL*
*FEB -3 A4:39*

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below.    If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

WILLIAM G. JEPSEN, JR
Name of Plaintiff's Attorney

1711 STRATTON RD
Address CROFTON, MD 21114

301-261-3982
Telephone

By _____
Deputy Clerk

Date _____

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

**NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.**

## IN THE SUPERIOR COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Metropolitan Campus Police<br>Officers Union (MCPOU)<br>2225 Georgia Avenue, #804<br>P.O. Box 26384<br>Washington, D.C. 20001<br><br>   Movant,<br><br>   v.<br><br>Howard University (HU)<br>2400 6th Street, NW<br>Washington, D.C. 20059<br><br>   Opponent.<br><br>   Serve: Norma Leftwich, Esq. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

RECEIVED
OFFICE OF THE
GENERAL COUNSEL
'06 FEB -3 A4:39

06-0000711

Case No. _____

> RECEIVED
> CIVIL CLERK'S OFFICE
>
> FEB 0 2 2006
>
> SUPERIOR COURT
> OF THE DISTRICT OF COLUMBIA
> WASHINGTON, DC

## MOTION FOR CONFIRMATION OF ARBITRATION AWARD

COMES NOW Plaintiff, through undersigned counsel, who moves that this Court

confirm its arbitration award against Defendant, and in support of its motion states the following:

1. This Court has jurisdiction pursuant to D.C. Code §16-4315.

2. On or about December 23, 2003, the parties entered into a written labor agreement

which included a provision to arbitrate disputes under the agreement, a copy of the relevant

sections of which is annexed hereto as Exhibit A.

3. On or about November 13, 2005, Dr. A.Y. McKissick, arbitrator, rendered an award

which is annexed hereto as Exhibit B.

4. On or about November 23, 2005, Arbitrator McKissick denied Howard University's

motion for reconsideration.

5. On or about January 4, 2006, Howard University advised MCPOU that it would not

comply with the award.

6. Copies of all documents required by SCR-Civil 70-I(b) are annexed as Exhibits.

WHEREFORE Movant prays:

A. That judgment be awarded in accordance with the arbitration award by ordering the opponent to implement the salary schedule contained in Appendix C of the labor agreement, effective May 6, 2004, and

B. That judgment be awarded against Opponent for attorney's fees and costs necessitated by this action.

Respectfully submitted,

William G. Jepsen, Jr. [323123]
1711 Stratton Road
Crofton, MD  21114
302-261-3982
Fax - 410-451-4706
Counsel for MCPOU

# IN THE SUPERIOR COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Metropolitan Campus Police<br>Officers Union (MCPOU)<br><br>     Movant,<br><br>v.<br><br>Howard University (HU)<br><br>     Opponent. | )<br>)<br>)<br>)<br>)<br>)    Case No. _____<br>)<br>)<br>)<br>)<br>) |

## ORDER

Upon consideration of the Motion for Confirmation, the opposition thereto, and the entire record herein,

it is ORDERED:

That the Motion is granted;

That the Opponent shall comply with the terms of the arbitration award and implement the salary schedule in Appendix C, including back pay from May 6, 2004;

That the Opponent shall pay all costs related to this action; and

That the Opponent shall pay Movant's reasonable attorney's.

_____
Date

_____
Judge
Superior Court of the District of Columbia

3

**EXHIBIT   A**

@008

COLLECTIVE BARGAINING AGREEMENT
BETWEEN
HOWARD UNIVERSITY
AND
METROPOLITAN CAMPUS POLICE OFFICERS UNION

EFFECTIVE

MARCH 27, 2002
THROUGH

MARCH 26, 2005

# PREAMBLE

This agreement is made and entered into this - day of
2003, by
and between Howard University and Hospital of Washington, D.C. (hereinafter "Employer") and
the Metropolitan Campus Police Officers Union (hereinafter "Union" or "MCPOU").

## ARTICLE 1. RECOGNITION

**I.I. Recognition.**
LLL The Employer recognizes the Union as the sole and exclusive bargaining representative for
the bargaining unit.

**1.2. Definition of Bargaining Unit.**
1.2. 1. The bargaining unit includes:

1.2.1.1. All security officers, traffic monitors, and parking lot attendants.

1.2.1.2. Special police officers, sergeants, senior special police officers, and campus police
officers employed by the Employer at its Howard University and Howard University Hospital,
Washington, DC locations; but excluding al] full-time students, office clerical employees, and
supervisors as defined in the National Labor Relations Act.

**1.3. Re-titled Classifications.**
1.3.1. In the event that any of the above listed classifications are re-titled without any change in
job duties, such classification shall be included in Section 1 ~2.

1.4. New Classirications. 1.4.1. In the event that any new classifications are created, the inclusion
of the new classifications shall be discussed with the Union.

1.4.2. In the event the University and the Union are unable to agree on the inclusion or exclusion
of a classification, the Union may file a grievance pursuant to Article 3 1. Grievance/Arbitration
procedure.

1.5. Subcontracting. 1.5.1. Contractors shall not be regularly assigned to perform bargaining unit
functions in lieu of bargaining unit members, Contractors may be used by the Employer to
supplement bargaining unit functions, such as for additional staffing for special projects, in
emergencies, for traffic or crowd control, or in short-term circumstances or other seasonal
requirements. If the Union believes that contractors are being utilized inappropriately, it may
meet with the Chief of Police to discuss such disputes or disagreements.

29.2. Criminal Defense. 29.2- 1. Employer shall, at the Employer's expense, defend any Employee against any criminal charges brought against such Employee for acts committed by the Employee in the line of duty within the scope of the Employee's authority and while in the course of employment.

## ARTICLE 30. GRIEVANCE/ARBITRATION PROCEDURE

**30.1. Purpose.**
30.1 . 1. The purpose of the grievance procedure is to establish effective machinery for the fair, expeditious, and orderly adjustment of grievances. Only an allegation that there has been a violation, misapplication, or misinterpretation of the terms of this Agreement shall constitute a grievance under the provisions of this grievance procedure.

30.2. Presence of Union Representative. 30.2. 1. No pre-disciplinary conference, reprimand, less than satisfactory work performance claim, suspension, discharge, transfer, termination or any other disciplinary action shall be taken against an employee without the prior presence of a Union representative, shop steward, or someone of the employee's choosing to serve as a witness during the initial phase of supervisory disciplinary action. Union representation shall continue throughout the grievance process.

**30.3. Grievance Procedure - Steps. 30.3, 1. Step 1. Immediate Supervisor:** 30.3.1 ~ 1. The aggrieved employee and the Union representative, if requested, shall discuss the grievance with the employee's immediate supervisor within ten (10) days of the date of the grievance or the employee's knowledge of its occurrence,

30.3.1.2. The decision of the immediate supervisor shall not be considered binding precedent. The Supervisor shall render a decision within ten (10) days following the hearing date.

30.3.2. Step 2. Chief of Campus Police: 30.3.2. L: If the grievance is not resolved at Step 1, it shall be presented in writing to the Chief of Campus Police within five (5) days following the aforementioned meeting.

30.3.2.2. The Chief of Campus Police (or designee) shall meet with the aggrieved employee and the Union President (or designee), and provide a written answer to the grievance within ten (10) days following receipt of the Step 2 appeal.

30.3.3. **Step 3. Director of Business and Fiscal Affairs.** 30.3.3. 1. The Union may appeal in writing within five (5) days of the receipt of the Step 2 reply to the Director of Business and Fiscal Affairs or designee.

30.3.3.2. The Director of Business and Fiscal Affairs (or designee) shall meet with the Union representative and the grievant and render a written decision within twenty one (21) days following receipt of the Step 3 appeal. The designee cannot be any individual from the Step 2 level.

30.3.4. **Step 4. Arbitration.** 30.3.4. 1. If the Step 3 response is not satisfactory to the Union, it may appeal the grievance to arbitration within seven (7) days of receipt of the Step 3 reply by

notification to the Director of Employee and Labor Relations, and the American Arbitration Association for naming an Arbitrator.

30-3.4.2. The selection of the arbitrator and the conduct of the arbitration hearing shall be in accordance with the rules of the American Arbitration Association. The arbitrator's decision shall be final and binding upon the parties.

30-4. Discharge Case. 30.4. 1 . In a discharge case the grievance must be heard at Step 2 before the discharge can be effected.

**30.5. Calculation of Time.**
30.5. 1. The periods of time indicated herein shall be exclusive of Saturdays, Sundays, or holidays.

30-6. **Arbitrator's** Fees.
30.6.1. The arbitrator's fee and expenses shall be shared equally by the University and the MCPOU.

30.7. Loss of Pay. 30.7. L Any employee found to be unjustly suspended or discharged shall be reimbursed with full compensation for all time lost and with full restoration of all rights and conditions of employment.

30.7.2. Employees and Union representatives involved in the grievance and arbitration procedures shaJJ do so without loss of pay.

30.8. Time Limits. 30.8.1. In the event that the Employer fails to meet the time constraints stated herein, the aggrieved employee shall have the right to proceed to the next grievance level.

ARTICLE 31. PERSONNEL FILES.

31.1. Employee Access. 3 1. 1. 1. The contents of personnel records shall be made available to the Employee for inspection and review at any reasonable time during the regular business hours of Employer. At their request, Employees shall be provided one copy of any document placed in the Employee's file.

31.2. Notice of **Placement of Item in File.** 31-2. 1. Employees shall be simultaneously notified in writing when anything other than of a routine nature is placed in their personnel files. In this same regard, a copy of any disciplinary action or material related to job performance which is placed in an Employee's personnel file shall be made available to the Employee prior to or at the same time that it is placed in the personnel file

**31.3. Information Contained in File.**
31.3. 1. Personnel investigations that result in exonerated, unfounded, or not sustained dispositions shall not be made a part of the Employee's personnel file.

31.3.2. A record of oral reprimand and/or counseling will not be maintained in the Employee's personnel file.

**31.4. Removal of information.**

31.4. 1. Any information, documents, or correspondence related to disciplinary action shall be removed from employee's personnel file if requested in writing by the employee, provided one (1) year has elapsed since the most recent entry, except where the material reflects repeated infractions which may form the basis of a pattern of abuse.

31.4.2. No adverse material will be inserted in the personnel folder of an Employee without the Employee's knowledge.

31.4.3. Any Employee and/or his/her authorized representative shall have the fight to review his/her official personnel file at any time, provided only that such review takes place upon reasonable notice and during the regular business hours of the Employer. Upon request, any Employee is entitled to a copy of any document in his/her personnel file.

## ARTICLE 32. PROMOTIONS AND FILLING VACANCIES

**32.1.** Whenever a regular position vacancy occurs within the Department at the Special Police Officer level or higher, the Employer shall post a description of such opening on bulletin boards convenient to work areas (including satellite location) and on all official bulletin boards for a period of ten (10) working days or through such procedures as are otherwise agreed to between the Union and the Employer.

32-2. Employees may bid on such jobs by submitting a written application to the Employer prior to the expiration date of the posting.

32.3. In filling job vacancies within the Department, factors to be considered shall include continuous length of service within the department, qualifications, job perfon-nance evaluations and disciplinary record.

32.4, Employer will make a good faith effort to increase upward mobility at the Hospital, including adding promotional opportunities to the position of sergeant.

32.5. Upward mobility will be a topic of Labor Management Conferences.

## ARTICLE 33. WAGES.

33-1. Pay Increases. 33.1.1. Effective March 28,2002, the minimum and maximum annual rates of pay of each Parking Attendant and Security Officer, Special Police Officer and Senior Special Police Officer, and any vacant position in those classifications, shall be increased per the attached Appendix C. Effective March 28, 2002, each Employee in the above-mentioned four (4) classifications shall receive an increase of 2%. Those Employees receiving a 2% increase shall have their rriinimurn and maximum annual rates of pay increased by 2%.

33.1.2. Effective March 28, 2003, Employees shall receive an increase of 2%, which shall be added to their existing rate of pay. Effective March 28, 2003, the minimum and maximum annual rates of pay for each position shall also be increased by 2%.

33.1.3. Effective March 28, 2004, employees shall receive an increase of 2%, which shall be added to their existing rate of pay. Effective March 28, 2004, the minimum and maximum annual rates of pay for each position shall also be increased by 2%.

33.1.4. A schedule of the minimum and maximum annual rates of pay for each position is attached as Appendix C. No employee's base pay shall be neither less than the minimum nor more than the maximum for the position.

33.1.5. Effective July 1, 2003 and each July I thereafter, all employees who have at least six montlis of active employment in their position as of June 30 and who receive a rating of satisfactory or above on their performance evaluation shall be eligible for a performance pay increase as set forth below. Employees who have less than six months' active employment in their position as of June 30 shall not be eligible for a perfon-nance pay increase until the following July.

33.1.5. 1. Pay increases based on performance shall be:

| Rating | Increase |
|--------|----------|
| Excellent | 3% |
| Above Average | 2% |
| Satisfactory | I % |

33.1.5.2. If the calculated increase would cause the employee's pay to exceed the maximum for his/her position, the employee's base pay shall be increased to the maximum for the position and 100% of the difference shall be paid in a single, lump sum payment.

## ARTICLE 34. SAVINGS CLAUSE.

34.1. General. 34. 1. 1. If any Section, or portion thereof, of this Agreement, or any Addendum to this Agreement, should be held invalid or to conflict with applicable Federal or State law by any court of competent jurisdiction, the remainder of the Agreement and its Addendums shall not be !kffected thereby, and the parties shall enter into immediate collective bargaining negotiations for the purpose of arriving at a mutually satisfactory replacement for such Section.

**34.2. Waiver of Breach of Contract.**
34.11. The waiver of any breach, term or condition of this Agreement by either party shall not constitute a precedent in the future enforcement of all its terms and conditions.

## ARTICLE 35. ENTIRE AGREEMENTIWAIVER

**35.1. General.**
35. 1 - 1. The Agreement expressed herein in writing constitutes the entire Agreement between the parties and no oral statement shall add to or supersede any of its provisions.

35-1.2. The Employer shall not enter into any individual agreements or arrangements with any bargaining unit employees, as consistent with Federal law.

## ARTICLE 36. DURATION

36.1. General. 36. 1. 1. The term of this Agreement shall commence on March 28, 2002 and shall continue in full force and effect until March 27, 2005.

## ARTICLE 37. CONTINUATION AND TERMINATION OF CONTRACT

## ARTICLE 36.  DURATION

**36.1.  General.**

36.1.1.  The term of this Agreement shall commence on March 28, 2002 and shall continue in full force and effect until March 27, 2005.

## ARTICLE 37.  CONTINUATION AND TERMINATION OF CONTRACT

**37.1.  General.**

37.1.1.  Either party may at least ninety (90) days and not more than one hundred twenty (120) days prior to March 27, 2005, give written notice to the other party of its intent to amend, modify, or terminate this Agreement.  This Agreement shall be deemed to be renewed from year to year unless either party notifies the other in writing at least ninety (90) days before the expiration date of its desire to amend, alter or modify said Agreement on such expiration date.

## ARTICLE 38.  FUTURE CONTRACT NEGOTIATIONS.

### RESERVED.

**IN WITNESS WHEREOF,** the parties have duly executed this Agreement the day and year written below:

**METROPOLITAN CAMPUS POLICE OFFICERS UNION**

Carla McCormick
President

Date: *12-22-03*

**HOWARD UNIVERSITY**

H. Patrick Swygert
President

Date: *12/23/03.*

Page 38 of 38

APPENDIX C

| | | |
|---|---|---|
| PA,SO | 24.35% | |
| SPO | 28.60% | |
| SSPO | 23.60% | |
| MIN/MAX DIFF | 4.50% | 4.50% |

| | | 2001 | | | | | 20 | |
|---|---|---|---|---|---|---|---|---|
| | | P.A. | S.O. | S.P.O. | S.S.P.O. | | P.A. | S.O. |
| Starting | min | $ 18,263 | $ 18,263 | $ 23,004 | $ 28,339 | | $ 22,710 | $ 22,710 |
| | max | $ 25,279 | $ 25,279 | $ 31,844 | $ 39,227 | | $ 23,731 | $ 23,731 |
| | | | | | STEP DIF | | 4.50% | 4.50% |
| After 1 year | min | | | | | | $ 23,732 | $ 23,732 |
| | max | | | | | | $ 24,799 | $ 24,799 |
| | | | | | STEP DIF | | 4.50% | 4.50% |
| 5 years | min | | | | | | $ 24,800 | $ 24,800 |
| | max | | | | | | $ 25,915 | $ 25,915 |
| | | | | | STEP DIF | | 4.50% | 4.50% |
| 10 years | min | | | | | | $ 25,916 | $ 25,916 |
| | max | | | | | | $ 27,081 | $ 27,081 |
| | | | | | STEP DIF | | 5.00% | 5.00% |
| 15 years | min | | | | | | $ 27,212 | $ 27,212 |
| | max | | | | | | $ 28,435 | $ 28,435 |
| | | | | | STEP DIF | | 5.05% | 5.05% |
| 20 years | min | | | | | | $ 28,586 | $ 28,586 |
| | max | | | | | | $ 29,871 | $ 29,871 |

APPENDIX C

| 02 | | | 2003 | | | | | |
| S.P.O | S.S.P.O | | P.A | S.O | S.P.O | S.S.P.O | | P.A. |
| 4.50% | 4.25% | | 2.00% 2.00% 2.00% 4.50% | 4.50% | 4.50% | 4.25% | | 2.00% 2.00% 2.00% 4.50% |
| $ 29,583 | $ 35,027 | | $ 23,164 | $ 23,164 | $ 30,175 | $ 35,728 | | $ 23,628 |
| $ 30,913 | $ 36,515 | | $ 24,206 | $ 24,206 | $ 31,532 | $ 37,334 | | $ 24,690 |
| 4.50% | 4.25% | | 4.50% | 4.50% | 4.50% | 4.25% | | 4.50% |
| $ 30,914 | $ 36,516 | | $ 24,207 | $ 24,207 | $ 31,533 | $ 37,246 | | $ 24,691 |
| $ 32,305 | $ 38,067 | | $ 25,295 | $ 25,295 | $ 32,951 | $ 38,828 | | $ 25,801 |
| 4.50% | 4.25% | | 4.50% | 4.50% | 4.50% | 4.25% | | 4.50% |
| $ 32,306 | $ 38,068 | | $ 25,296 | $ 25,296 | $ 32,952 | $ 38,829 | | $ 25,802 |
| $ 33,758 | $ 39,684 | | $ 26,433 | $ 26,433 | $ 34,433 | $ 40,478 | | $ 26,962 |
| 4.50% | 4.25% | | 4.50% | 4.50% | 4.50% | 4.25% | | 4.50% |
| $ 33,759 | $ 39,685 | | $ 26,434 | $ 26,434 | $ 34,434 | $ 40,479 | | $ 26,963 |
| $ 35,277 | $ 41,371 | | $ 27,623 | $ 27,623 | $ 35,983 | $ 42,199 | | $ 28,175 |
| 4.50% | 4.50% | | 5.00% | 5.00% | 5.00% | 4.50% | | 5.00% |
| $ 35,278 | $ 41,471 | | $ 27,756 | $ 27,756 | $ 35,984 | $ 42,301 | | $ 28,311 |
| $ 36,865 | $ 43,233 | | $ 29,004 | $ 29,004 | $ 37,602 | $ 44,097 | | $ 29,584 |
| 4.70% | 4.60% | | 5.05% | 5.05% | 4.70% | 4.60% | | 5.05% |
| $ 36,937 | $ 43,379 | | $ 29,158 | $ 29,158 | $ 37,675 | $ 44,247 | | $ 29,741 |
| $ 38,598 | $ 45,222 | | $ 30,469 | $ 30,469 | $ 39,370 | $ 46,126 | | $ 31,078 |

APPENDIX C

| 4.50% | 4.50% | 4.25% | | | | | |
|-------|-------|-------|---|---|---|---|---|
| **2004** | | | | | | | |
| **S.O.** | **S.P.O.** | **S.S.P.O.** | | | | | |
| $ 23,628 | $ 30,778 | $ 36,442 | | | | | |
| $ 24,690 | $ 32,162 | $ 38,081 | | | | | |
| 4.50% | 4.50% | 4.25% | | | | | |
| $ 24,691 | $ 32,163 | $ 37,991 | | | | | |
| $ 25,801 | $ 33,610 | $ 39,604 | | | | | |
| 4.50% | 4.50% | 4.25% | | | | | |
| $ 25,802 | $ 33,611 | $ 39,605 | | | | | |
| $ 26,962 | $ 35,122 | $ 41,288 | | | | | |
| 4.50% | 4.50% | 4.25% | | | | | |
| $ 26,963 | $ 35,123 | $ 41,289 | | | | | |
| $ 28,175 | $ 36,703 | $ 43,043 | | | | | |
| 5.00% | 4.50% | 4.50% | | | | | |
| $ 28,311 | $ 36,704 | $ 43,147 | | | | | |
| $ 29,584 | $ 38,354 | $ 44,979 | | | | | |
| 5.05% | 4.70% | 4.60% | | | | | |
| $ 29,741 | $ 38,429 | $ 45,131 | | | | | |
| $ 31,078 | $ 40,157 | $ 47,049 | | | | | |

**EXHIBIT  B**

### PERMANENT PANEL

| | |
|---|---|
| In the Matter of the Arbitration<br><br>between<br><br>Howard University and Hospital<br>of Washington, D.C.<br><br>and<br><br>Metropolitan Campus Police Officers Union | Class Action Grievance<br>Contract Violation - Compensation<br><br>Case No: 16 300 L 00879 04 |

**OPINION AND AWARD:**  Dr. Andree Y. McKissick, **ARBITRATOR**

**APPEARANCES:**

For Management:   Repunzelle R. Johnson, Esquire
Associate General Counsel, Labor Relations
Howard University, Office of the General Counsel
2400 - 6th Street, N.W., Suite 321
Washington, DC 20059

For Union:   William G. Jepsen, Jr., Esquire
Attorney at Law
1711 Stratton Road
Crofton, Maryland 21114

**DATE AND PLACE OF HEARING:**   **July 26, 2005**
Howard University, Office of the General Counsel
2400 - 6th Street, N.W.
Building A, Suite 321
Washington, DC 20059

**POST-HEARING BRIEFS:**   **September 9, 2005**

**AWARD:**   This grievance is sustained. The parties entered into a valid, binding contract on December 23, 2003, as Appendix C was attached and could have been reviewed at that juncture. Based upon evidence presented, the exceptions to this rule of contract law are not applicable. For the reasons stated herein, the remedy of back pay, commencing on the date of the grievance, May 6, 2004, is appropriate. Accordingly, this Arbitrator will retain jurisdiction until Appendix C has been fully implemented.

**DATE OF AWARD:**   November 13, 2005

_____
**ARBITRATOR**

## BACKGROUND

This is the arbitration proceeding pursuant to the grievance and arbitration provisions of the Collective Bargaining Agreement between Howard University and Hospital of Washington, D.C. (hereinafter "Employer") and the Metropolitan Campus Police Officers Union (MCPOU, hereinafter "Union"). The hearing was held on July 26, 2005, at the Howard University Office of the General Counsel, located at 2400 - 6th Street, N.W., Building A, Suite 321, in Washington, D.C. At the hearing, exhibits were offered and made part of the record and oral argument was heard. Post-Hearing Briefs were received on or about September 9, 2005.

## STATEMENT OF THE FACTS

This is a group grievance between Howard University and the Metropolitan Campus Police Officers Union (MCPOU) regarding Article 33, Appendix C, which is a wage provision encompassing pay bands. MCPOU is an independent union that is the exclusive representative of a unit composed of officers and sergeants on the Howard University Campus Police Department, as well as employees in certain security-related positions. The record reflects that negotiations began in June 2003.

The agreement of wages was that each employee, reflecting one's position, would receive either a $4,000 or $6,000 increase to their base salaries. The record also reflects that the parties agreed that each employee could receive an across the board annual increase of 2% (two percent) in year one, 2% (two percent) in year two, and 2% (two percent) in year three. In addition, the parties agreed that such increases would be retroactive to March 27, 2002, which was the expiration of the former contract.

2

Evidence indicates that there was a push to get retroactive checks to Union members due to the Christmas season. The Union held two (2) meetings of its members regarding the Contract. The first was an informational meeting, dated November 13, 2003. Ratification occurred on December 5, 2003, which was the second meeting. Subsequently, the Agreement was forwarded to President Swygert who signed it on December 23, 2003.

The record reveals that Union President McCormick was not provided a copy of the executed Agreement by the end of January. Therefore, she duplicated the "working copy" of the document that Deputy Chief Armstrong had posted for his commanders and supervisors.

Although the Union members received increases to their base salaries in January 2004, discussions regarding Appendix C, reflecting the years in service differential, were continuing. In the ensuing weeks, Attorney Jenkins, Special Association General Council, allegedly informed Union President McCormick that the pay bands in Appendix C had not been agreed to and she should speak to Attorney Kline, the Union's Chief Negotiator. Although the University sought to have Attorney Kline testify, it was objected to by the Union citing attorney-client privilege. This objection was sustained due to reasons noted based upon confidentiality.

Based upon the above events, this grievance was filed on May 6, 2004 alleging violation of Article 33, Section 33.1.4 and Appendix C of the Agreement. Thereupon, the Employer provided a Step II response to Union President McCormick's inquiry regarding the pay bands stating that the years of the pay proposal should not have been incorporated into Appendix C. Step III, dated May 11, 2004, of the grievance process occurred resulting in denial of the grievance. Pursuant to Article 30, Section 30.3.4, Arbitration of the Agreement, this Arbitrator was selected and arbitration ensued.

## STIPULATED ISSUE

**Whether or not the Parties had a meeting of the minds on Appendix C, the Wage Compensation package?**

## PERTINENT PROVISIONS

The central controversy of this grievance lies within the applicability of the contractual provisions in the aforementioned Agreement between Employer and Union (CBA - Joint Exhibit I), effective March 28, 2002 through March 27, 2005.

## COLLECTIVE BARGAINING AGREEMENT
### (Joint Exhibit I)

## ARTICLE 30. GRIEVANCE ARBITRATION PROCEDURE

30.1.    Purpose.
30.1.1.    The purpose of this grievance procedure is to establish effective machinery for the fair, expeditious, and orderly adjustment of grievances. Only an allegation that there has been a violation, misapplication, or misinterpretation of the terms of this Agreement shall constitute a grievance under the provisions of this grievance procedure.
30.2.    Presence of Union Representative.
30.2.1.    No pre-disciplinary conference, reprimand, less than satisfactory work performance claim, suspension, discharge, transfer, termination or any other disciplinary action shall be taken against an employee without the prior presence of a Union representative, shop steward, or someone of the employee's choosing to serve as a witness during the initial phase of supervisory disciplinary action. Union representation shall continue throughout the grievance process.
30.3.    Grievance Procedure – Steps.
30.3.1.    Step 1. Immediate Supervisor:
30.3.1.1.    The aggrieved employee and the Union representative, if requested, shall discuss the grievance with the employee's immediate supervisor within ten (10) days of the grievance or the employee's knowledge of its occurrence.
30.3.1.2.    The decision of the immediate supervisor shall not be considered binding precedent. The Supervisor shall render a decision within ten (10) days following the hearing date.
30.3.2.    Step 2. Chief of Campus Police:
30.3.2.1    If the grievance is not resolved at Step 1, it shall be presented in writing to the Chief of Campus Police within five (5) days following the aforementioned meeting.
30.3.2.2.    The Chief of Campus Police (or designee) shall meet with the aggrieved employee and the Union President (or designee), and provide a written answer to the grievance within ten (10) days following receipt of the Step 2 appeal.
30.3.3.    Step 3. Director of Business and Fiscal Affairs.
30.3.3.1.    The Union may appeal in writing within five (5) days of the receipt of the Step 2 reply to the Director of Business and Fiscal Affairs or designee.
30.3.3.2.    The Director of Business and Fiscal Affairs (or designee) shall meet with the Union representative and the grievant and render a written decision within twenty one (21) days following the receipt of the Step 3 appeal. The designee cannot be any individual from the Step 2 level.

4

30.3.4.    Step 4. Arbitration.

30.3.4.1.  If the Step 3 response is not satisfactory to the Union, it may appeal the grievance to arbitration within seven (7) days of receipt of the Step 3 reply by notification to the Director of Employee and Labor Relations, and the American Arbitration Association for naming an Arbitrator.

30.3.4.2.  The selection of the arbitrator and the conduct of the arbitration hearing shall be in accordance with the rules of the American Arbitration Association.  The arbitrator's decision shall be final and binding upon the parties.

# ARTICLE 33.  WAGES.

30.2.    Pay Increases.

33.1.1.    Effective March 28, 2002, the minimum and maximum annual rates of pay of each Parking Attendant and Security Officer, Special Police Officer and Senior Special Police Officer, and any vacant position in those classifications, shall be increased per the attached Appendix C.  Effective March 28, 2002, each Employee in the above-mentioned four (4) classifications shall receive an increase of 2%.  Those Employees receiving a 2% increase shall have their minimum and maximum annual rates of pay increased by 2%.

33.1.2.    Effective March 28, 2003, Employees shall receive an increase of 2%, which shall be added to their existing rate of pay.  Effective March 28, 2003, the minimum and maximum annual rates of pay for each position shall also be increased by 2%.

33.1.3.    Effective March 28, 2004, employees shall receive an increase of 2%, which shall be added to their existing rate of pay.  Effective March 28, 2004, the minimum and maximum annual rates of pay for each position shall also be increased by 2%.

33.1.4.    A schedule of the minimum and maximum annual rates of pay for each position is attached as Appendix C. No employee's base pay shall be neither less than the minimum nor more than the maximum for the position

33.1.5.    Effective July 1, 2003 and each July 1 thereafter, all employees who have at least six months of active employment in their position as of June 30 and who receives a rating of satisfactory or above on their performance evaluation shall be eligible for a performance pay increase as set forth below.  Employees who have less than six months' active employment in their position as of June 30 shall not be eligible for a performance pay increase until the following July.

33.1.5..1.  Pay increases based on performance shall be:

| Rating | Increase |
|---|---|
| Excellent | 3% |
| Above Average | 2% |
| Satisfactory | 1% |

33.1.5.2.  If the calculated increase would cause the employee's pay to exceed the maximum for his/her position, the employer's base pay shall be increased to the maximum for the position and 100% of the difference shall be paid in a single, lump sum payment.

# APPENDIX C

| | |
|---|---|
| PA, SO | 24.35% |
| SPO | 28.60% |
| SSPO | 23.60% |
| MIN/MAX DIFF | 4.50%    4.50% |

| | | 2001 | | | | | 20 |  |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | 4.50% | |
| | | P.A. | S.O. | S.P.O. | S.S.P.O. | | P.A. | S.O. |
| Starting | min | $ 18,263 | $ 18,263 | $ 23,004 | $ 28,339 | | $ 22,710 | $ 22,710 |
| | max | $ 25,279 | $ 25,279 | $ 31,844 | $ 39,227 | STEP DIF | $ 23,731 | $ 23,731 |
| | | | | | | | 4.50% | 4.50% |
| After 1 year | min | | | | | | $ 23,732 | $ 23,732 |
| | max | | | | | | $ 24,799 | $ 24,799 |

5



| | | | | STEP DIF | | 4.50% | 4.50% |
|---|---|---|---|---|---|---|---|
| | | | | | | $24,800 | $24,800 |
| 5 years | min | | | | | $25,915 | $25,915 |
| | max | | | STEP DIF | | 4.50% | 4.50% |
| | | | | | | $25,916 | $25,916 |
| 10 years | min | | | | | $27,081 | $27,081 |
| | max | | | STEP DIF | | 5.00% | 5.00% |
| | | | | | | $27,212 | $27,212 |
| 15 years | min | | | | | $28,435 | $28,435 |
| | max | | | STEP DIF | | 5.05% | 5.05% |
| | | | | | | $28,586 | $28,586 |
| 20 years | min | | | | | $29,871 | $29,871 |
| | max | | | | | | |

| | | | 2.00% | | | | | 2.00% |
| | | | 2.00% | | | | | 2.00% |
| | | | 2.00% | | | | | 2.00% |
| 4.50% | 4.25% | | 4.50% | 4.50% | 4.50% | 4.25% | | 4.50% |
|---|---|---|---|---|---|---|---|---|
| 02 | | | | 2003 | | | | |
| S.P.O. | S.S.P.O. | | P.A. | S.O. | S.P.O. | S.S.P.O. | | P.A. |
| $29,583 | $35,027 | | $23,164 | $23,164 | $30,175 | $35,728 | | $23,628 |
| $30,913 | $36,515 | | $24,206 | $24,206 | $31,532 | $37,334 | | $24,690 |
| 4.50% | 4.25% | | 4.50% | 4.50% | 4.50% | 4.25% | | 4.50% |
| $30,914 | $36,516 | | $24,207 | $24,207 | $31,533 | $37,246 | | $24,691 |
| $32,305 | $38,067 | | $25,295 | $25,295 | $32,951 | $38,828 | | $25,801 |
| 4.50% | 4.25% | | 4.50% | 4.50% | 4.50% | 4.25% | | 4.50% |
| $32,306 | $38,068 | | $25,296 | $25,296 | $32,952 | $38,829 | | $25,802 |
| $33,758 | $39,684 | | $26,433 | $26,433 | $34,433 | $40,478 | | $26,962 |
| 4.50% | 4.25% | | 4.50% | 4.50% | 4.50% | 4.25% | | 4.50% |
| $33,759 | $39,685 | | $26,434 | $26,434 | $34,434 | $40,479 | | $26,963 |
| $35,277 | $41,371 | | $27,623 | $27,623 | $35,983 | $42,199 | | $28,175 |
| 4.50% | 4.50% | | 5.00% | 5.00% | 4.50% | 4.50% | | 5.00% |
| $35,278 | $41,471 | | $27,756 | $27,756 | $35,984 | $42,301 | | $28,311 |
| $36,865 | $43,233 | | $29,004 | $29,004 | $37,602 | $44,097 | | $29,584 |
| 4.70% | 4.60% | | 5.05% | 5.05% | 4.70% | 4.60% | | 5.05% |
| $36,937 | $43,379 | | $29,158 | $29,158 | $37,675 | $44,247 | | $29,741 |
| $38,598 | $45,222 | | $30,469 | $30,469 | $39,370 | $46,126 | | $31,078 |

| 4.50% | 4.50% | 4.25% |
|---|---|---|
| 2004 | | |
| S.O. | S.P.O. | S.S.P.O. |
| $23,628 | $30,778 | $36,442 |
| $24,690 | $32,162 | $38,081 |
| 4.50% | 4.50% | 4.25% |
| $24,691 | $32,163 | $37,991 |
| $25,801 | $33,610 | $39,604 |
| 4.50% | 4.50% | 4.25% |
| $25,802 | $33,611 | $39,605 |
| $26,962 | $35,122 | $41,288 |
| 4.50% | 4.50% | 4.25% |
| $26,963 | $35,123 | $41,289 |
| $28,175 | $36,703 | $43,043 |
| 5.00% | 4.50% | 4.50% |
| $28,311 | $36,704 | $43,147 |
| $29,584 | $38,354 | $44,979 |
| 5.05% | 4.70% | 4.60% |
| $29,741 | $38,429 | $45,131 |
| $31,078 | $40,157 | $47,049 |

## POSITIONS OF THE PARTIES

It is the Employer's position that the University never agreed to the pay band, as set forth in Appendix C. Thus, these bands are unenforceable as there was no meeting of the minds on this issue. Moreover, the Employer argues that the Union knew full well that it did not intend to be bound by the pay bands. Besides, the Employer points out, the Union has the burden of proving that the pay bands were agreed to since it seeks to enforce this contract. However, the Employer asserts that the Union has failed to prove the terms of the contract. That is, the Employer contends, the Union did not present any documentation to support the contention that the pay bands in Appendix C were agreed upon at the ratification meeting.

Although the Employer initially rejected the offer of the pay bands, it later stated that it would consider the offer, provided the bands would fit within the $1.8 million authorized limit. At best, the Employer contends, the provision constitutes a counter-offer, not an agreement. Stated differently, the Employer maintains that the proviso is a significant material term that operates as a counter-offer, not a binding contract as the Union asserts.

Additionally, the Employer maintains that the parties continued to discuss the pay bands well after the Contract was ratified on December 23, 2003. Based on all of the above, the Employer concludes that there was no meeting of the minds, thus the pay bands are unenforceable.

It is the position of the Union that the University has refused to honor the contract which constitutes a breach. The Union contends that the parties agreed to the wage scale set forth in Appendix C of the contract after a lengthy session in the Undergraduate Library. The Union asserts that thereafter they ratified the Agreement. Pursuant to the Union's bylaws, the Union argues that there were two (2) informational and ratification meetings at which the provisions

7

were explained to the membership. The Union maintains that the tally of the ratification vote was eighty-eight (88) in favor and none opposed. Although the University asserts that the parties agreed to hold off on Appendix C, the Union counters that no specific documentation was presented as verification of any agreement to that effect. In response to the Employer's assertion of an e-mail from Attorney Kline to Attorney Jenkins indicating that the parties needed to finish negotiations on Appendix C, the Union argues that the Employer admits that it had implemented salary increases in order to give Union members additional pay for Christmas. However, the Union maintains that this e-mail does not controvert the force and effect of President Swygert's action in executing the Contract.

## FINDINGS AND DISCUSSION

After a careful review of the record in its entirety, and after having had an opportunity to weigh and evaluate the testimony of the witnesses, this Arbitrator finds that this grievance shall be sustained for the following reasons.

First, the objective law of contracts is that the written language embodies the terms of the agreement and will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract.

Applying this contractual principle to the current grievance, this Agreement including Appendix C, the pay bands, was submitted to the University's President for its acceptance on December 22, 2003 (Joint Exhibit I). The Agreement was signed and dated by Metropolitan Campus Police Officers Union President McCormick on December 22, 2003 and then by President Swygert on December 23, 2003. Upon President Swygert's signature, the Agreement

became a viable contract, absent duress, fraud or mutual mistake, the exceptions to this general contractual principle.

Second, although fraud, duress and/or mutual mistake was alleged, this Arbitrator finds that there is no evidence to support these allegations. Specifically, the underpinning of fraud is that there is a deliberate intent to defraud or deceive. The record seems to indicate that the Union genuinely thought that the pay bands were negotiated and agreed upon. An informational and ratification meeting was held with that understanding on November 13, 2003 and December 5, 2003, respectively. (U-3, U-4).

Clearly, no one forced anyone's signature. Thus, duress was not a viable exception. Nor was there a mutual mistake by both parties. That is, the Union fully acknowleges that the Agreement was completely agreed upon, which contained Appendix C. (Joint Exhibit I) Instead, it would seem that a unilateral mistake was made when President Swygert failed to carefully review this Agreement, which included Appendix C, before he ratified it. It is interesting to note that the so-called "working copy" of the Agreement was not discovered before it landed upon President Swygert's desk.

Third, the record does not reveal any clear and concrete evidence to support the University's contentions that it was agreed to by the parties and that Appendix C would be tabled for discussion at a later date. That is, the e-mail, dated February 9, 2004, from Attorney Kline to Attorney Jenkins inquiring whether or not he had "any comments/suggestions regarding the salary bands" alone is ambiguous. (M-1) Moreover, this inquiry could relate to its upcoming implementation of the salary scale. The subject matter of the e-mail (M-1), entitled "finishing contract", implies that details after ratification were needed. The preceding sentence also refers

9

to a request for "Performance Appraisal that is to be used for the guards", which would again appear to suggest implementation of a ratified contract.

Fourth, the absence of President Swygert's testimony is significant because it made it difficult to ascertain his state of mind when he signed the Agreement. The omission to explain his absence is also worthy of note. Thus, without knowing his intent and state of mind, this Arbitrator must conclude that he knowingly and willingly entered a valid and binding Agreement when he signed the contract, which contained Appendix C, Joint Exhibit I.

Fifth, based upon all of the above, the Union has met its burden of proof with supporting data and testimony to show the viability of the Agreement.

Sixth, even the University admits that the prevailing law personifying the objective law of contract is still viable, as are its exceptions, as discussed earlier. The University rightly points to the supportive case law on that issue, <u>DSP Venture Group, Inc. v. Richard M. Allen</u>, 830 A2nd. 850, 2003 DC App. Lexis 535 (2003), which distinguishes unilateral and mutual mistake. It held that "[t]he seller bore the risk of that mistake, as he did not read the contract."

Seventh, looking at the totality of events, it would seem that the University fully agreed to the entire contract, except it had second thoughts on Appendix C because the total cost exceeded the $1.8 million dollar allotment. Besides, it was almost on the eve of Christmas, when the University, in good faith, earnestly sought for the implementation to materialize before Christmas day. Thus, in its haste, the University did not carefully review the entirety of the contract before it was signed by its President. Since the economic duress was not a viable option to collaterally attack the validity of the contract after its ratification, as <u>W.R. Grace and Co. v. Rubber Workers, Local Union 759,</u> 461 US 757 (1983), Footnote 12, points out, the University sought to re-open negotiations only on Appendix C via this arbitration. (Joint Exhibit II)

10

Eighth, based on the evidence of record, taking into consideration the omission of the testimony of the University's President, this Arbitrator is compelled to conclude that the Agreement was properly executed and ratified upon his signing of the Contract on December 23, 2003.

## AWARD

**This grievance is sustained. The parties entered into a valid, binding contract on December 23, 2003, as Appendix C was attached and could have been reviewed at that juncture. Based upon evidence presented, the exceptions to this rule of contract law are not applicable. For the reasons stated herein, the remedy of back pay, commencing on the date of the grievance, May 6, 2004, is appropriate. Accordingly, this Arbitrator will retain jurisdiction until Appendix C has been fully implemented.**

_____
ARBITRATOR

C:\HUH v CP-10-05.doc

**EXHIBIT   C**

⌐031



M.C.P.O.U.

Metropolitan Campus Police Officer Union
P. O. Box 26384  Washington DC 20059

Phone: 202-265-2794
Fax:   202-265-2795

# METROPOLITAN CAMPUS POLICE OFFICERS UNION

## OFFICIAL GRIEVANCE FORM  (print this form and complete)

MCPOU STEP# 1 ②3          GRIEVANCE NO._____

Name of Employee _MC POU membership_   Rank _SO, SPO, SSPO_

Department _Campus Police_   Immediate Supervisor_____

Statement of Grievance: (Who, When, Where, What, and How) Use additional sheets, if necessary.

List applicable violation: _Howard University has Failed to Comply with The Collective Bargaining Agreement_

Articles and Sections of the contract violated: _Article 33 section 33.14 and Appendix C 2004 per CBA_
but, not limited thereto

Remedy: _Request that said violation be Corrected immediately_
and, to be made whole

I authorize MCPOU as my representative to act for me in the disposition of the grievance.

Date:_____ Signature of Employee: ( see Document Attached )

Signature if Union Representative: _Carl McDaniel_  Title: _President_

Date Presented to Management Representative:_____

Signature:_____          Title:_____

This statement of Grievance is to be made out in triplicate. All three are to be signed by the Employee and/or the MCPOU Representative handling the case.

Original to_____  Copy_____  Copy to Local Grievance File.

Note: One copy of this grievance and its disposition to be kept in Grievance File of Local Union.

JEx 2

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

P. Jean Baker, Esq.
Vice President

601 Pennsylvania Avenue, NW, Suite 700, Washington, DC 20004-2676
telephone: 202 737 1673, facsimile: 202 737 9999
www.adr.org

December 15, 2005

Carla McCormick
Metropolitan Campus Police Officers' Union
P.O. Box 26384
Washington, DC 20001

RE: *Demand for Arbitration in Howard University vs. Metropolitan Campus Police Officers Union*

Dear Ms. McCormick:

The above referenced Demand for Arbitration and a check for $50.00, check number 0106945, has been received by this office of the American Arbitration Association (AAA). It has been forwarded to the Southeast Case Management Center, located in Atlanta, GA, and will be assigned to a Case Manager. You can soon expect to receive correspondence from a Case Manager, after which it will no longer be necessary for you to send correspondence to this office.

Prior to receipt of the letter from the Case Manager, if any problems or questions arise please contact me at 202-737-1673.

Sincerely,

P. Jean Baker
Vice President

# AMERICAN ARBITRATION ASSOCIATION

Re: 16 300 L 00879 04
    Metropolitan Campus Police Officers Union
    and
    Howard University

Grievances:    Contract violation - Compensation

DATE LIST SUBMITTED: December 17, 2004
CASE MANAGER:  Angela N. Earl

## LIST FOR SELECTION OF ARBITRATOR(S)

************************************************************************************

After striking the name of any unacceptable arbitrator, please indicate your order of preference by number. We will try to appoint a mutually acceptable arbitrator who can hear your case promptly. Leave as many names as possible.

Stephen E. Alpern
Salvatore J. Arrigo
Leroy Clark
Charles E. Donegan
Alice L. Everitt
Barbara B. Franklin
Lois C. Hochhauser
Dr. A. Y. McKissick
Michael A. Murphy
Malcolm L. Pritzker
Sue Olinger Shaw
Gail R. Smith
John R. Stepp
Clara A. Williamson
Michael Wolf

************************************************************************************

Party _____

By _____  Title _____

NOTE: Biographical information is attached. Unless your response is received by the Association **WITHIN 10 CALENDAR DAYS OF THE DATE OF THIS LIST**, all names submitted may be deemed acceptable.

Contact American Arbitration Association
2200 Century Parkway
Suite 300
Atlanta, GA 30345
telephone: 404-325-0101  facsimile: 404-325-8034

**Labor Panel**

**Dr. A. Y. McKissick**

**Occupation**  Arbitrator, Mediator

**Experience**  Full-time arbitrator since 1988.  Guest lecturer, for the Advanced Arbitration Advocacy George Meany Center for Labor Studies, Howard University School of Law, and Georgetown University School of Business.  Member of the AAA National Employment ADR Task Force.  Appointed by Warren Christopher, Former Secretary of State, to the Foreign Service Grievance Board (1996-98), and re-appointed by Madeline Albright, Secretary of State (1998-present).  The Jurisdiction of the FSGB encompasses: Department of Commerce, Department of State, Department of Agriculture, U.S. Information Agency, and U.S. Agency for International Aid (USAID).  Member of the Federal Mediation and Conciliation Service, the National Mediation Board, the District of Columbia Public Employees Relations Board, the Pennsylvania Bureau of Mediation, the Pennsylvania Labor Relations Board, and the New York City Office of Collective Bargaining.  From 1994 to 1997, associated with Thomas R. Colosi, Vice President of National Affairs, American Arbitration Association on ADR.  Faculty, AAA Labor Arbitrator II Training.

**Issues**  Absenteeism, alcohol and drug abuse, arbitrability, bad faith bargaining, bumping, callback pay, contract interpretation/application, demotion, disability benefits, discharge, discipline, discrimination (race and gender), insubordination, jurisdictional disputes, layoff, leave of absence, management rights, maternity leave/pregnancy leave, overtime, past practices, promotion, recall, scheduling of work, sexual harassment, subcontracting, vacation/holiday pay, wages.

**Industries**  Aerospace, coal, dairy, education, federal sector, food, health care, machinist, manufacturing, maritime, printing, printing and paper, public sector (police/fire, sanitation/correction, postal), shipping, shipping and towing, transportation/trucking and teamsters.

**Permanent Arbitrator**  Social Security Administration & AFGE; Montgomery County & Montgomery County Government Employees Organization, UFCWU, Local 1994; U.S. Postal Service & APWU (Allegheny Region) and NALC (Eastern Region); Department of Labor & AFGE, Local 12; Peabody Coal Company & UMWA District 11, Midwest Division, Indiana Operations; Harman Mining/Consolidation's Island Creek/Westmoreland/Arch Minerals Coal Companies & UMWA District 28, Virginia, West Virginia and Kentucky Operations; Port Authority Trans-Hudson Corporation (PATH)/Wheeling and Lake Erie Railway & Brotherhood of Railroad Signalmen; National Railroad Adjustment Board, Third Division (Chicago, IL); National Railroad Passenger Corporation (Amtrak) and International Association of Machinist and Aerospace Workers (IAM&AW), Public Law Board 5951; National Archives and Records Administration (NARA) & AFGE, Council 260; Internal Revenue Service (IRS) & National Treasury Employees Union (NTEU); Newport News Shipbuilding and the United Steelworkers of America (Local 8888).

*Dr. A. Y. McKissick*
*129737*

**Work History**   Attorney/Lobbyist, Potomac Electric Power Company, 1976-77; Judicial Clerkship, Judge James H. Taylor, Prince George's County, Maryland, 1974-76.

**Education**   Howard University (JD-1974); George Washington University (LLM, Labor Law-1982; SJD, Labor and Employment Law; Statutory Interpretation-1988).

**Professional Associations**   National Academy of Arbitrators (Region 4, District of Columbia, Virginia, and Maryland, Chair); Industrial Relations Research Association (Baltimore Chapter, Former President; Former First and Second Vice President).

**Publications and Speaking Engagements**   "A Practical Guide to Drug and Alcohol Issues in Arbitration," JOURNAL OF INDIVIDUAL EMPLOYMENT RIGHTS, vol. 2, no. 4, March 1994; co-author, "Drug and Alcohol Issues," chapter 22, LABOR AND EMPLOYMENT ARBITRATION, vol. 1, Matthew Bender, February 1993.

**Alternative Dispute Resolution Training**   Attended AAA Neutrals Conference, San Antonio, 3/04; Arbitrator Update 2004, San Antonio; ACE001 - Arbitration Awards: Safeguarding, Deciding & Writing Awards, San Antonio, 3/04; Faculty, AAA Labor Arbitrator II Training, Cleveland, 2/04; AAA Labor Arbitrator II Training, Boulder, 10/03; AAA Employment Arbitrator II Training, Cleveland, 9/02; AAA Employment Arbitrator Training Workshop, San Francisco, 10/00; AAA Advanced Mediation Skills Training, Washington, DC, 7/95.

**Compensation**         $900.00 Per Day
Per-diem fee charged for Cancellation notice 14 days or less from hearing. Travel time charged at prorated per-diem rate. Travel expenses @ cost (i.e. lodging, meals, airfare, & incidentals for hearing). Mileage @ IRS rate. Travel time & expenses charged from nearest business address (Chevy Chase, MD or Cincinnati, OH)

**Citizenship**   United States of America

**Locale**   Chevy Chase, MD

*Dr. A. Y. McKissick*
*129737*

**Dr. A. Y. McKissick**
**Arbitrator**
**2808 Navarre Drive**
**Chevy Chase, Maryland**
**20815-3802**
**Voice: (301) 587 – 3343**
**Fax: (301) 587 – 3609**
**E-Mail: McKiss3343@aol.com**
**November 23, 2005**

In the Matter of the Arbitration between

**Howard University and Hospital**
**of Washington, D.C.**

and

**Metropolitan Campus Police Officers Union**

Class Action Grievance
Contract Violation - Compensation

Case No: 16 300 L 00879 04

## <u>MOTION FOR RECONSIDERATION</u>

Pursuant to Article 30, Section 30.3.4.2. of your Agreement, "The Arbitrator's decision shall be final and binding upon the parties." Accordingly, this Arbitrator finds that the Request for Stay and the Motion for Reconsideration must be DENIED.

_____
**ARBITRATOR**

C:\Motion for Reconsideration.doc



# HOWARD
# UNIVERSITY

Office of the General Counsel

November 16, 2005

Dr. Andree McKissick
2808 Navarre Drive
Chevy Chase, MD 20815-3802

Re:     Class Action Grievance
        Case No: 16 300 L 00879 04
        (Request for Stay and Motion for Reconsideration)

Dear Arbitrator McKissick:

The University is in receipt of your award regarding the above referenced matter. We respectfully disagree with the award and wish to be heard on the basis for our disagreement. We believe the award, along with evidentiary decisions made during the course of the arbitration, are contrary to law and public policy. Accordingly, we would like to request your reconsideration of this matter, and wish to submit a brief in support of our position.

This award, if implemented, would involve a hugh expenditure of funds by the University. Because of the potential exposure to the University we are requesting a stay of the award pending your disposition of this request for reconsideration.

Although there are a number of issues we wish to address, we are particularly concerned about your decision to disallow the union's Chief Negotiator, Kimberly Kline, to testify as a fact witness regarding the whether or not there was a meeting of the minds on Appendix C, between the Metropolitan Campus Police Officers Union and Howard University. Your decision was based, as we understand, on her role as counsel to the union. However, we did not wish to present evidence concerning her statements to her client. Rather, statements made by Ms. Kline to Leroy Jenkins, Chief Negotiator for the University, especially in open negotiation sessions, are not protected by attorney/client privilege, and should not have been disallowed.

We have historically respected your decisions regarding the University's matters, and continue to do so. However, this time we respectfully disagree.

Sincerely,

Repunzelle R. Johnson
Associate General Counsel for Labor Relations

2400 6th Street, NW
Washington, DC 20059

Telephone 202 806 2650
Facsimile 202 806 6357
www.howard.edu

# WILLIAM G. JEPSEN, JR.

### Attorney at Law

William G. Jepsen, Jr. (MD & DC)

1711 Stratton Road
Crofton, Maryland 21114
(301) 261-3982
Phone/Fax 410-451-4706

November 18, 2005

<u>BY FACSIMILE</u>

Dr. Andree Y. McKissick
2808 Navarre Drive
Chevy Chase, MD 20815-3802

   Re: *In re* MCPOU and Howard University
    Case No. 16-300-L-00879-04

Dear Dr. McKissick:

  This is in response to management's request to submit and additional brief for your reconsideration of your award. The request is inappropriate and must be denied.

  Under the expressed terms of the bargaining agreement, the award is "final and binding upon the parties." J.Ex.1, §30.3.4.2. There also is no provision for a unilateral request for reconsideration of the award under AAA rules.

     Sincerely,

     William G. Jepsen, Jr.

301-587-3609
202-806-6357

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| METROPOLITAN CAMPUS POLICE OFFICER'S UNION<br>2225 Georgia Avenue, #804<br>P.O. Box 26384<br>Washington, DC 20001<br><br>Plaintiff,<br><br>v.<br><br>HOWARD UNIVERSITY<br>2400 6th Street, NW<br>Washington, DC 20059<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. _____ |

## NOTICE OF REMOVAL

TO:    THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

PLEASE TAKE NOTICE that Defendant Howard University, by counsel, pursuant to 28 U.S.C. §§ 1441 and 1446, submits this Notice of Removal of Civil Action No. 06-711 from the District of Columbia Superior Court to this Court. As grounds for removal, Howard University states as follows:

    1.    On or about February 3, 2006, Howard University was served with Plaintiff's Summons, Motion for Confirmation of Arbitration Award ("Motion"), and an Initial Order from the Superior Court in the civil action entitled Metropolitan Campus Police Officer's Union v. Howard University, Case No. 06-711. A true and correct copy of the Summons, Motion and Initial Order are attached hereto as Exhibit "1."

2.    The Summons, Motion and Initial Order constitute all the processes, pleadings, and orders received by Howard University from the Superior Court in this action.

3.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1331 because Defendant Metropolitan Campus Police Officer's Union ("Defendant" or the "Union") seeks, in the State Court Action (D.C. Superior Court Civil Action 06-711) (hereafter, the "State Court Action"), confirmation of an arbitration award, pursuant to D.C. Code § 16-4315. The State Court Action arises under, and is pre-empted by, a federal statute, Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) ("Section 301(a)"). Specifically, the State Court Action is a lawsuit to enforce an arbitration award based on an alleged violation of a contract between Howard University, an employer, and the Union, a labor organization representing employees in an industry affecting commerce, within the meaning of Section 301(a).

4.    The time for filing this Notice has not expired pursuant to 28 U.S.C. §1446(b). This Notice is filed with this Court within thirty (30) days after Howard University's receipt of Plaintiff's Summons and Motion filed in the District of Columbia Superior Court.

5.    By virtue of this Notice of Removal, Howard University does not waive its right either to respond to the Motion and/or assert any claims, defenses or other motions, including but not limited to, Rule 12 motions permitted by the Federal Rules of Civil Procedure, or any motion to vacate the arbitration award pursuant to Section 301(a) or any applicable law.

6.    Written notice of the filing of this Notice will be given forthwith to all adverse parties as required by law.

7.    A true copy of this Notice will be filed in the office of the District of Columbia Superior Court, the court in which this case was originally filed.

2

**WHEREFORE,** Howard University respectfully requests that the instant action now pending in the District of Columbia Superior Court be removed to the United States District Court for the District of Columbia.

Respectfully submitted,

Dated: February 13, 2006

By: _____
TRINA L. FAIRLEY (D.C. Bar No. 464102)
KEITH J. HARRISON (D.C. Bar No. 416755)
**KING, PAGANO HARRISON**
1730 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C.  20006
(202) 371-6800

Counsel for Defendant
Howard University

3

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 13th day of February 2006, I caused a copy of the foregoing **NOTICE OF REMOVAL** to be delivered via first class mail to the following individual:

William G. Jepsen, Jr.
1711 Station Road
Crofton, MD 21114

Attorney for Plaintiff
Metropolitan Campus
Officers Union

Trina L. Fairley